UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL LEMUS and ADOLFO LEMUS, | No. 1:15-cv-00359-MCE-GSA |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| COUNTY OF MERCED, et al. | |
| Defendants. | |

In their First Amended Complaint ("FAC"), Plaintiffs Adolfo Lemus and Noel Lemus allege violations of their federal civil rights pursuant to 42 U.S.C. § 1983 against Defendant County of Merced ("County") and Defendant Officer Paul Barile ("Officer Barile"). Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' FAC (ECF No. 16), brought pursuant to Federal Rule of Civil Procedure 12(b)(6)[1], for failure to state a claim upon which relief may be granted. By way of their Motion, Defendants seek dismissal of Plaintiffs' only claim against the County. Defendants further ask the Court to strike portions of Plaintiffs' FAC. ECF No. 16. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED, and their Motion to Strike is DENIED as moot.[2]

---

[1] All further references to "Rule" are to the Federal Rules of Civil Procedure unless otherwise specified.

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

1

# BACKGROUND[3]

This case arises from an incident that occurred on March 8, 2013 during a social gathering at Plaintiff Adolfo Lemus' ("Adolfo") residence.  The Merced County Sheriff's Department[4] was dispatched to investigate a noise and gunshot complaint at or near Adolfo's residence.  Officer Barile, a Merced County Sheriff's Officer employed by the County, responded to that complaint.

When Officer Barile arrived, he gained access to Adolfo's residence by climbing over a gated entrance at the front of the property and entering the residence.  After making contact with Adolfo, Officer Barile began searching the residence.  During the search, Officer Barile arrived at the locked door of a bedroom where Plaintiff Noel Lemus ("Noel") was "passed out" on the bed.  Officer Barile applied force to gain entry to the bedroom, awakening Noel.  According to Noel, as he attempted to comply with Officer Barile's command to get on the ground, Barile forcibly kicked him in the back.  Noel impacted the ground, resulting in personal injury.  Noel was subsequently placed in handcuffs and taken out of Adolfo's home.

Plaintiffs claim that the entry and search of Adolfo's property and dwelling were made without a warrant, without probable cause, consent or invitation, and were not subject to any privilege.  FAC ¶ 54.  Plaintiffs allege that the Officer's conduct violated their "civil and constitutional rights."  Id. ¶ 53.  In addition, Plaintiffs contend that "Defendants restrained an unspecified Plaintiff "in violation of Civil Rights secured to Citizens under the Fourth Amendment of the United States Constitution." Id. ¶ 55.

According to Plaintiffs, these purported constitutional violations were made possible because the County has a policy and custom of permitting "sergeant shopping," whereby officers may change sergeants in order to obtain approval of questionable

---

[3] The following statement of facts is based on the allegations in Plaintiffs' FAC (ECF No. 15).

[4] The County, a municipal corporation duly organized and existing under California State law, operates the Merced County Sheriff's Department under its authority.

and/or improper conduct, and in so doing to effectuate a desired outcome.  Plaintiffs claim this policy and custom has created a system where an officer feels safe in overstepping the bounds of the law.  More specifically, if an officer meets resistance from one supervising sergeant, he need only "shop" for another who is more likely to approve the particular police tactics involved.  According to Plaintiffs, "[t]his knowledge and power was a moving force behind the constitutional violations" they suffered.  Id. ¶ 64.

Plaintiffs further allege that the County is liable for Plaintiffs' injuries because both a sergeant and captain, final policymaking authorities, ratified the decision of Officer Barile by reading and reviewing his report, and recommending that criminal charges for negligent discharge of a firearm be pursued against Noel.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).

A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

Defendants seek dismissal of Plaintiffs' § 1983 claim against the County of Merced on the ground that Plaintiffs have failed to sufficiently allege facts to establish municipal liability against the County. Defs.' Mem. Supp. Mot. to Dismiss 4:2–4, ECF No. 16–1 ("Defs.' Mem."). Municipalities and local officials cannot be vicariously liable for the conduct of their employees under § 1983, but rather are only "responsible for their own illegal acts." Connick v. Thompson, ____ U.S.____, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). In other words, a municipality may only be liable where it individually caused a constitutional violation via "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Ninth Circuit has recognized three ways to establish a custom or policy of a governmental entity for purposes of municipal liability:

> (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. County of San Francisco, 308 F.3d 968, 984–85 (9th Cir. 2002)); see also Menotti v. City of Seattle, 409 F.3d 1113 (9th Cir. 2005). Plaintiffs contend they have alleged facts sufficient to state a claim for municipal liability against the County based on (1) a policy or custom of "sergeant shopping" which caused Plaintiffs' injuries; and (2) a final policymaking

authority's ratifying a subordinate's decision.[5]  Pls.' Opp'n Mot. to Dismiss 3:26–4:3, ECF No. 19.  The Court addresses the sufficiency of the allegations supporting each theory in turn.

### A.  Sergeant Shopping

Defendants contend that municipal liability has not been established because the FAC does not allege facts sufficient to show that the County has a widespread custom or practice of "sergeant shopping."  Defs.' Mem. 6:20-1.  Defendants' argument is well taken.

To establish liability for governmental entities pursuant to a longstanding practice or custom, the Ninth Circuit has stated that a plaintiff must show:

> (1) that the plaintiff possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.

Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

A longstanding practice or custom is one that is so "persistent and widespread" that it constitutes a "permanent and well settled" governmental policy.  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (internal citations omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Id. (internal citations omitted).  The line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully-developed factual record.  Compare Davis v.

---

[5] The FAC also states that "the multiple instances of unreasonable warrantless entry and searches was [sic] the proximate result of [the County's] failure to reasonably train their officers on probable cause and exigent circumstances.  These failures, among the others alleged herein, resulted in the warrantless and unjustified entry, search and arrest at issue in this Civil Action." FAC ¶ 44.  Though it appears Plaintiffs are alleging the County's liability based on a failure to train, they have pled no facts to support such a theory.  Moreover, Plaintiffs do not contend in their Opposition to Defendants' Motion to Dismiss (ECF No. 19) that "failure to train" is a theory of municipal liability they intend on pursuing.

City of Ellensburg, 869 F.2d 1230, 1233–34 (9th Cir. 1989) (single incident of excessive force inadequate to establish liability); Meehan v. County of Los Angeles, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents insufficient), with Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (triable issue of fact existed as to whether Seattle had an unconstitutional policy or custom of suppressing certain political speech based on the testimony of several individuals that their entry to a particular area was permitted by police only after they removed offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area).

    Plaintiffs' allegations here regarding the "persistent and widespread" nature of the custom of "sergeant shopping" are conclusory.  The FAC offers no factual support for the proposition that "sergeant shopping" is "common in the Merced County Sheriff's Department."  It also fails to state any facts to corroborate its bare allegation that "Defendant Barile's actions in 'sergeant shopping' are consistent with the custom and practice of [the County]."  See FAC ¶ 39–40.  Furthermore, Plaintiffs provide no facts to support the conclusory allegation that the County's custom or policy of "sergeant shopping" is a "standard operating procedure," or that "[t]he constitutional violations by [Officer Barile] and [the County] are so widespread and of common practice."  See FAC ¶ 62, 65.  Indeed, Plaintiffs have not identified any other incidents where County's custom of "sergeant shopping" resulted in a constitutional violation.  See FAC ¶ 40, 62.  In sum, Plaintiffs' allegations fail to put Defendants on "fair notice of what the . . . claim is and the grounds upon which it rests," nor are they enough to "raise [Plaintiffs'] right to relief above the speculative level."  See Twombly at 355.  Defendants' Motion to Dismiss on this theory is GRANTED with leave to amend.

    **B.**    **Ratification**

    Defendants also contend that Plaintiffs' "ratification" theory fails because Plaintiffs failed to allege facts to support the conclusory statement that "an unnamed sergeant and captain were 'final policymaking authorities.' "  Defs.' Mem. 7:13–15.  As such, according

///

to Defendants, the unnamed sergeant and captain could not have ratified a decision of a subordinate. Defs.' Mem. 8:21–25. Again, Defendants' argument is well taken.

"[W]hether a particular official has 'final policymaking authority' is a question of state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (plurality opinion) (emphasis in original) (internal citations omitted). To determine whether an official is a final policymaker, "courts consider whether the official's discretionary decisions are 'constrained by policies not of that official's making' and whether the official's decisions are 'subject to review by the municipality's authorized policymakers.'" Christie v. Iopa, 176 F.3d 1231 (9th Cir. 1999) (quoting St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

In opposing Defendant's position, Plaintiffs contend that because the unnamed sergeant and captain have final authority in approving deputy's reports and submitting them for criminal prosecution, they have final policymaking authority. Pls.' Opp'n 6:2–5. They further contend that "the unnamed sergeant and captain have final policymaking authority because their decisions are not subject to de novo review by higher ranking officials." Id. at 6:4–5. However, Plaintiffs have made no such allegations in the FAC. Rather, the FAC simply states in conclusory fashion that the unnamed individuals have final policymaking authority.[6] FAC ¶¶ 41–2, 63. Such "legal conclusions couched as . . . factual allegations" are not entitled to a presumption of truth. Iqbal, 129 S. Ct. at 1950. Because Plaintiffs fail to set forth any facts supporting the conclusion that the sergeant and captain had final policymaking authority, Defendants Motion is GRANTED with leave to amend as to Plaintiffs' ratification theory as well.

///

---

[6] Plaintiffs have provided the Court with the job duties for a captain in the Merced County Sheriff's Department. Decl. of Joel Waelty 2:3–4, ECF No. 18. Although Plaintiffs have not identified why they have provided such information, the Court assumes it is to support the assertion that the unnamed captain is a final policymaking authority. Plaintiffs argue that because of a captain's numerous job duties, an individual serving in that capacity clearly has final policymaking authority. Pls.' Opp'n 6:1–21. However, nowhere in the captain's job duties does it state that a captain has final policymaking authority. See Decl. of Waelty, Merced County Captain, Ex. B, ECF No. 18–2. Again, Plaintiffs' conclusory statements do not satisfy the pleading requirements of Rule 8.

**CONCLUSION**

Defendants' Motion to Dismiss (ECF No. 16) is GRANTED with leave to amend, and Defendants' Motion to Strike (ECF No. 16) is DENIED as moot. Not later than twenty (20) days following the date this Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint. If no amended complaint is filed, the cause of action against Defendant County will be dismissed with prejudice and without further notice to the parties.

IT IS SO ORDERED.

DATED: OCTOBER 9, 2015

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT