1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   NOEL LEMUS, ADOLFO LEMUS,              No.  1:15-cv-00359-MCE-EPG

12              Plaintiffs,

13        v.                                **MEMORANDUM AND ORDER**

14   COUNTY OF MERCED, MERCED
     COUNTY SHERIFF'S DEPARTMENT,
15   PAUL BARILE; and DOES 1-50,
     inclusive,
16
                Defendants.
17

18

19        In their Second Amended Complaint ("SAC"), Plaintiffs Adolfo and Noel Lemus

20   allege that Defendant County of Merced ("County") and Defendant Officer Paul Barile

21   ("Officer Barile") violated their federal civil rights under 42 U.S.C. § 1983.  Pending

22   before the Court is Defendants' Motion to Dismiss (ECF No. 25) for failure to state a

23   claim upon which relief may be granted.  Defendants seek dismissal of Plaintiffs' only

24   claim against the County, and further ask the Court to strike portions of Plaintiffs' SAC.

25   For the reasons that follow, Defendants' Motion to Dismiss is DENIED, and their Motion

26   to Strike is also DENIED.

27   ///

28   ///

                                              1

1

2

**BACKGROUND**[1]

3      This case arises from an incident that occurred on March 8, 2013, during a social

4  gathering at the residence of Plaintiff Adolfo Lemus ("Adolfo") in Merced, California.  The

5  Merced County Sheriff's Department was dispatched to investigate a noise and gunshot

6  complaint at or near Adolfo's residence.  Officer Barile, a Merced County Sheriff's Officer

7  employed by the County, responded to that complaint.

8      When Officer Barile arrived, he gained access to Adolfo's residence by climbing

9  over a gated entrance at the front of the property and entering the residence.  After

10  making contact with Adolfo, Officer Barile began searching the residence.  During that

11  search, he encountered the locked door of a bedroom where Plaintiff Noel Lemus

12  ("Noel") was sleeping.  Officer Barile applied force to gain entry to the bedroom,

13  awakening Noel.  According to Noel, as he attempted to comply with Officer Barile's

14  command to get on the ground, Officer Barile forcibly kicked him in the back.  Noel was

15  injured when he hit the ground.  Officer Barile subsequently placed Noel in handcuffs

16  and removed him from Adolfo's home.

17      Plaintiffs claim that the entry and search of Adolfo's property and dwelling were

18  made without a warrant, without probable cause, consent or invitation, and were not

19  subject to any privilege.  SAC, ¶ 60.  They allege that  Officer Barile's conduct

20  consequently violated their constitutional rights.  In addition, Plaintiffs contend that

21  Defendants restrained Noel in violation of his civil rights guaranteed by the Fourth

22  Amendment.  Id. at 57, p. 11.[2]

23      According to Plaintiffs, these purported constitutional violations were made

24  possible because the County has a policy and custom of permitting "sergeant shopping,"

25  _____

26      [1] The following statement of facts is based on the allegations in Plaintiffs' SAC (ECF No. 24).

27      [2] The Court notes that the allegations contained in the SAC are mis-numbered, with ¶ 59 on page 10 followed by ¶ 47.  The references in this Memorandum and Order are to the paragraph numbers as utilized in the SAC, except that where the same paragraph number is used twice the paragraph

28  designation will be followed by the page number of the SAC where it appears.

1    a practice in which officers search for a superior to approve questionable or improper

2    conduct even in the face of another sergeant's previous refusal to do so.  More

3    colloquially, if an officer meets resistance from one supervising sergeant, he need only

4    "shop" for another who is more likely to approve the particular police tactics involved.

5    Plaintiffs claim this policy and custom has created a system where officers feel safe in

6    overstepping the bounds of the law.    According to Plaintiffs, "[t]his knowledge and

7    power was a moving force behind the constitutional violations" they suffered.  Id. at 66.

8        Plaintiffs further allege that the County is liable for Plaintiffs' injuries because

9    Officer Barile engaged in sergeant shopping to justify Noel's arrest.  Specifically,

10   Plaintiffs allege that Mike Harris ("Harris"), the sergeant (now retired) who responded to

11   the scene, told Officer Barile that he could not pursue charges against Noel under the

12   circumstances. Barile nonetheless overstepped that recommendation and sought

13   consent to do so from Captain Jones, the patrol operations commander.  Plaintiff alleges

14   that Captain Jones, a final policymaking authority in this regard, ratified the decision of

15   Officer Barile by reading and reviewing the report he prepared after the incident, and

16   recommending that criminal charges for negligent discharge of a firearm be pursued

17   against Noel.

18       Furthermore, the SAC quotes Harris as stating that Officer Barile was known to

19   "embellish" reports and would frequently write long reports to cover his actions when

20   those actions were subject to question.  Id. at 50, p. 8.  Harris claims that higher ranking

21   officers within the organization authorized these embellished reports knowing they knew

22   they were used to cover questionable arrests.  Id.  According to the SAC, Harris also

23   indicates that Officer Barile had sergeant shopped in the past and that the practice was

24   tolerated by department supervisors and managers.  Id.

25   ///

26   ///

27   ///

28   ///

1
2

**STANDARD**

3    **A.  Motion to Dismiss**

4      On a motion to dismiss for failure to state a claim under Federal Rule of Civil

5    Procedure 12(b)(6),[3] all allegations of material fact must be accepted as true and

6    construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

7    Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

8    statement of the claim showing that the pleader is entitled to relief" in order to "give the

9    defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

10   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

11   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

12   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

13   his entitlement to relief requires more than labels and conclusions, and a formulaic

14   recitation of the elements of a cause of action will not do."  Id. (internal citations and

15   quotations omitted).  A court is not required to accept as true a "legal conclusion

16   couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

17   (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

18   to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

19   Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

20   that the pleading must contain something more than "a statement of facts that merely

21   creates a suspicion [of] a legally cognizable right of action.")).

22      Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

23   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

24   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

25   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

26   the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

27

28      _____

   [3] All further references to "Rule" are to the Federal Rules of Civil Procedures unless otherwise specified.

1   Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

2   facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

3   have not nudged their claims across the line from conceivable to plausible, their

4   complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

5   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

6   recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

7   232, 236 (1974)).

8       A court granting a motion to dismiss a complaint must then decide whether to

9   grant leave to amend.  Leave to amend should be "freely given" where there is no

10   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

11   to the opposing party by virtue of allowance of the amendment, [or] futility of the

12   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

13   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

14   be considered when deciding whether to grant leave to amend).  Not all of these factors

15   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

16   carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

17   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

18   "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

19   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

20   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

21   1989) ("Leave need not be granted where the amendment of the complaint . . .

22   constitutes an exercise in futility . . . .")).

23   **B.  Motion to Strike**

24       The Court may strike "from any pleading any insufficient defense or any

25   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he

26   function of a 12(f) motion to strike is to avoid the expenditure of time and money that

27   must arise from litigating spurious issues by dispensing with those issues prior to

28   trial. . . ."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

1    Immaterial matter is that which has no essential or important relationship to the claim for

2    relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th

3    Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations

4    omitted).  Impertinent matter consists of statements that do not pertain, and are not

5    necessary, to the issues in question.  Id.

6

7                                          **ANALYSIS**

8

9          Defendants seek dismissal of Plaintiffs' § 1983 claim against the County of

10   Merced on the ground that Plaintiffs have failed to sufficiently allege facts to establish

11   municipal liability against the County.  Municipalities and local officials cannot be

12   vicariously liable for the conduct of their employees under § 1983, but rather are only

13   "responsible for their own illegal acts."  Connick v. Thompson, 563 U.S. 51, 60 (quoting

14   Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 665-683 (1978)).  In other words, a

15   municipality may only be liable where it individually caused a constitutional violation via

16   "execution of a government's policy or custom, whether by its lawmakers or by those

17   whose edits or acts may fairly be said to represent official policy."  Monell, 436 U.S. at

18   694.  The Ninth Circuit has recognized three ways to establish a custom or policy of a

19   governmental entity for purposes of municipal liability:

20                    (1) the constitutional tort was the result of a "longstanding
                     practice or custom which constitutes the standard operating
21                    procedure of the local government entity; (2) the tortfeasor
                     was an official whose acts fairly represent official policy such
22                    that the challenged action constituted official policy; or (3) an
                     official with final policy-making authority "delegated that
23                    authority to, or ratified the decision of, a subordinate.

24   Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. County of San

25   Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002); see also Menotti v. City of Seattle,

26   409 F.3d 1113, 1147 (9th Cir. 2005).  Plaintiffs contend they have alleged facts sufficient

27   to state a claim for municipal liability against the County based on (1) a policy or custom

28   of "sergeant shopping" which caused Plaintiffs' injuries; and (2) a final policymaking

                                             6

1    authority's ratification of Officer Barile's decision.  SAC, ¶ 64-65.  The Court addresses

2    the sufficiency of the allegations supporting each theory in turn.[4]

3        **A. Sergeant Shopping**

4        Defendants contend that municipal liability has not been established because the

5    SAC does not allege facts sufficient to show that the County has a widespread custom or

6    practice of "sergeant shopping."  The Court disagrees.

7        To establish liability for governmental entities pursuant to a longstanding practice

8    or custom, a plaintiff must show:

9            (1) that the plaintiff possessed a constitutional right of which
             [he or she] was deprived; (2) that the municipality had a
10           policy; (3) that this policy amounts to deliberate indifference
             to the plaintiff's constitutional right; and. (4) that the policy is
11           the moving force behind the constitutional violation.

12   Plumeau v. Sch. Dist. No. 40 Cnty. Of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

13   (internal quotation marks omitted).

14       A longstanding practice or custom is one that is so "persistent and widespread"

15   that it constitutes a "permanent and well settled" governmental policy.  Trevino v. Gates,

16   99 F.3d 911, 918 (9th Cir. 1996) (internal citations omitted).  "Liability for improper

17   custom may not be predicated on isolated or sporadic incidents; it must be founded upon

18   practices of sufficient duration, frequency and consistency that the conduct has become

19   a traditional method of carrying out policy."  Id. (internal citations omitted).  The line

20   between "isolated or sporadic incidents" and "persistent widespread conduct" is not

21   clearly delineated, although where more than a few incidents are alleged, the

22   determination appears to require a fully-developed factual record.  Compare Davis v.

23   City of Ellensburg, 869 F.2d 1230, 1233-34 (9th Cir. 1989) (single incident of excessive

24   force inadequate to establish liability); Meehan v. County of Los Angeles, 856 F.2d 102,

25
26       [4] Defendants also contend that Officer Barile had probable cause to search the premises, and that
     he should be shielded from liability by qualified immunity in any event.  Defendants' contention with
     respect to probable cause was squarely rejected however, by a judicial determination that Barile's entry on
27   the property "violated Fourth Amendment search and seizure prohibitions."  ECF No. 17, 2, 9:2-15.
     Additionally, to the extent this constitutional violation was apparent to an average officer, qualified
     immunity does not appear to apply.  At the very least, Defendants' allegations in this regard cannot be
28   decided on the pleadings because they involve factual determinations.

1   107 (9th Cir. 1988) (two incidents insufficient), with Menotti v. City of Seattle, 409 F.3d

2   1113, 1147 (9th Cir. 2005) (triable issue of fact existed as to whether Seattle had an

3   unconstitutional policy or custom of suppressing certain political speech given the fact

4   that several individuals testified their entry to a demonstration was permitted only after

5   they removed offending buttons and stickers).

6        Here, Plaintiffs' allegations regarding the "persistent and widespread" nature of

7   the custom of "sergeant shopping" are sufficiently pled under Rule 8.  First, Plaintiffs

8   allege their constitutional rights were violated by an unlawful and warrantless search,

9   forcible entry and arrest through unreasonable and excessive force.  Second, Plaintiffs

10  contend that Defendants had a policy and custom of sergeant shopping that served to

11  condone Officer Barile's alleged misconduct in this regard.  Unlike its predecessor, the

12  SAC now offers factual corroboration for the proposition that "sergeant shopping" is

13  "widespread and persistent" in the Merced County Sherriff's Department."  See Trevino,

14  99 F.3d at 918.  According to the SAC, Officer Barile was known to "embellish" reports in

15  an attempt to justify his actions.  SAC, ¶ 50, p. 8.  The SAC reports Harris as stating that

16  higher ranking officers within the organization reviewed and authorized those reports

17  even though they knew they were  "cover ups of questionable arrests," and despite the

18  fact that Officer Barile was known in the Department "for not being truthful".  Id.

19  Additionally, Plaintiffs have further alleged, through Harris' statements, that Officer Barile

20  had sergeant shopped in the past and that department supervisors have tolerated the

21  practice, which "occurs throughout the organization."  Id.  According to Plaintiffs, that

22  practice tacitly promotes civil rights violations because if an officer's actions or report

23  meet with resistance, he can simply find "another supervising sergeant who will

24  approve."  Id. at 66.

25        As to the third prong, Plaintiffs have sufficiently alleged that by condoning the

26  custom of sergeant shopping, Defendants acted with deliberate indifference to Plaintiff's

27  constitutional rights.  See SAC, ¶ 66, Plumeau, 130 F.3d at 438.  Furthermore, the SAC

28  further avers that Harris has identified inadequate training by the department, particularly

1  with regard to civil rights issues.  Id. at ¶ 51, p. 8.  Plaintiffs contend this deficit will be

2  revealed by training records for the deputies involved in the subject incident.  Id.

3      Finally, Plaintiffs' allegation that because the practice of sergeant shopping was a

4  moving force behind the constitutional violations suffered, the fourth prong  of the

5  Plumeau test has also been satisfied.  Id. at 50-52.  Accordingly, Plaintiffs' allegations

6  have sufficiently put Defendants on "fair notice of what the . . . claim is and the grounds

7  upon which it rest" and are enough to "raise [Plaintiffs'] right to relief above the

8  speculative level."  See Twombly at 355.  Defendants' Motion to Dismiss on this theory is

9  DENIED.

10      **B. Ratification**

11      Defendants also contend that Plaintiffs' ratification theory fails because Plaintiffs

12  have failed to allege facts to support their conclusion that Captain Jones had authority to

13  make final government policy for the County of Merced or ratify the decision of a

14  subordinate.  As such, according to Defendants, Plaintiffs' allegations do not support a

15  claim for municipal liability because approving the filing of a report in a single case is not

16  a matter of policy making.  The Court again disagrees with Defendants.

17      "[W]hether a particular official has 'final policymaking authority' is a question of

18  state law."  City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) (plurality opinion)

19  (emphasis in original) (internal citations omitted).  To determine whether an official is a

20  final policymaker, "courts consider whether the official's discretionary decisions are

21  'constrained by policies not of that official's making' and whether the official's decisions

22  are 'subject to review by the municipality's authorized policymakers.'"  Christie v. Iopa,

23  176 F.3d 1231, 1236 (9th Cir. 1999) (quoting Praprotnik, 485 U.S. at 127).

24      In opposing Defendant's position, Plaintiffs identify Captain Jones as a policy

25  maker.  The SAC alleges that when Harris discovered he had been denied access to the

26  report written by Officer Barile, he spoke with Capt. Jones regarding that denial.  Harris

27  questioned Officer Barile's judgment and voiced concern that Noel's constitutional rights

28  had been violated.  Capt. Jones, however, appeared disinterested and did not explain

9

1  why Harris was denied access to the report.  Additionally, Captain Jones did not respond

2  when Harris emailed him requesting an internal affairs investigation on Officer Barile's

3  report.  SAC at ¶ 54, p. 9.  Despite Harris' articulated protests, Officer Barile allegedly

4  collaborated with Capt. Jones in obtaining authorization for his report.  CITE.  Captain

5  Jones further ratified Officer Barile's conduct by referring the matter for prosecution.  Id.

6  at 58, p. 10. Finally, Plaintiffs allege that Captain Jones was at all relevant times the

7  official second in command to the Sheriff himself, and was vested with autonomy to

8  supervise, review and approve actions of subordinate peace officers such that his review

9  and ratification were not subject to review by higher authority.  Id. at 57, p. 9.

10         Particularly when coupled with the SAC allegations that Officer Barile was known

11  for creating reports to hide his questionable conduct, the Court finds these averments

12  sufficient for purposes of alleging ratification of a false report through policymaking.

13  Because Plaintiffs allege enough factual allegations supporting a conclusion that Capt.

14  Jones had final policymaking authority, Defendants' Motion is DENIED.

15         **B.  Motion to Strike**

16         Defendants move to strike Plaintiff's allegations concerning Sgt. Harris as

17  immaterial, impertinent and not supporting any cause of action.  As the Court's analysis

18  above demonstrates, Sgt. Harris' specific involvement in the underlying incident, his

19  observations about the integrity of Officer Barile's reports, and his knowledge of the

20  practice of sergeant shopping within the Department are squarely relevant to the factual

21  bases for Plaintiffs' claims.  Defendants' request to strike portions of the SAC is therefore

22  DENIED.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## CONCLUSION

2

3         For all the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 25) is

4    DENIED in its entirety, including Defendants' alternative request that portions of the SAC

5    be stricken.

6         IT IS SO ORDERED.

7    Dated:  May 19, 2016

8    _____

9    MORRISON C. ENGLAND, JR.
     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28