# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL LEMUS, ADOLFO LEMUS,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MERCED, MERCED COUNTY SHERIFF'S DEPARTMENT, PAUL BARILE,<br><br>Defendants. | No. 1:15-cv-00359-MCE-EPG<br><br>**ORDER** |

In their Second Amended Complaint ("SAC"), Plaintiff Adolfo Lemus and Noel Lemus allege violations of their federal civil rights pursuant to 42 U.S.C. § 1983 by Defendant County of Merced ("County") and Defendant Officer Paul Barile ("Officer Barile"). By Memorandum and Order filed May 19, 2016 (ECF No. 29) the Court found, <u>inter alia</u>, that Officer Barile was not entitled to qualified immunity for the actions he took in entering and searching Plaintiff Adolfo Lemus' residence without a warrant.

On June 16, 2016, Officer Barile filed an interlocutory appeal with the Ninth Circuit Court of Appeals with respect to the Court's rejection of his qualified immunity claim. Presently before the Court is Defendant County's Motion to Bifurcate and Stay the present action pending a decision on that appeal. ECF No. 46. Plaintiffs have filed a Statement of Non-Opposition with respect to the County's request. ECF No. 47.

1

Moreover, Officer Barile has joined in the request, stating that imposition of a stay would assist in resolving the matter through mediation. ECF No. 48. For the reasons set forth below, Defendant County's Motion is GRANTED as to its stay request, but DENIED with regard to bifurcation of these proceedings.

## BACKGROUND[1]

This case arises from an incident that occurred on March 8, 2013, during a social gathering at the residence of Plaintiff Adolfo Lemus ("Adolfo") in Merced, California. The Merced County Sheriff's Department was dispatched to investigate a noise and gunshot complaint at or near Adolfo's residence. Officer Barile, a Merced County Sheriff's Officer employed by the County, responded to that complaint.

When Officer Barile arrived, he gained access to Adolfo's residence by climbing over a gated entrance at the front of the property and entering the residence. After making contact with Adolfo, Officer Barile began searching the residence. During that search, he encountered the locked door of a bedroom where Plaintiff Noel Lemus ("Noel") was sleeping. Officer Barile applied force to gain entry to the bedroom, awakening Noel. According to Noel, as he attempted to comply with Officer Barile's command to get on the ground, Officer Barile forcibly kicked him in the back. Noel impacted the ground, resulting in personal injury. Noel was subsequently placed in handcuffs and taken out of Adolfo's home.

Plaintiffs claim that the entry and search of Adolfo's property and dwelling were made without a warrant, without probable cause, consent, or invitation, and were not subject to any privilege. SAC, ¶ 60. They allege that Officer Barile's conduct

///

///

---

[1] The following statement of facts is based on the allegations in Plaintiffs' SAC (ECF No. 24).

2

consequently violated their constitutional rights. In addition, Plaintiffs contend that Officer Barile restrained Noel in violation of his Fourth Amendment rights. Id. at 57, p. 11.[2]

According to Plaintiffs, these purported constitutional violations were made possible because the County has a policy and custom of permitting "sergeant shopping," a practice that permits officers to search for a superior to approve questionable and/or improper conduct even in the face of another sergeant recommending otherwise. Plaintiffs claim this policy and custom has created a system where an officer feels safe in overstepping the bounds of the law. More specifically, if an officer meets resistance from one supervising sergeant, he need only "shop" for another who is more likely to approve the particular police tactics involved. According to Plaintiffs, "[t]his knowledge and power was a moving force behind the constitutional violations" they suffered. Id. at 66.

Plaintiffs further allege that the County is liable for Plaintiffs' injuries because—despite being told by retired Sgt. Mike Harris ("Harris"), the sergeant who responded to the scene, that Officer Barile could not pursue charges against Noel under the circumstances—Barile overstepped that recommendation and sought consent to do so from Captain Jones, the patrol operations commander. Plaintiffs allege that Captain Jones, a final policymaking authority in this regard, ratified the decision of Officer Barile by reading and reviewing his report, and recommending that criminal charges for negligent discharge of a firearm be pursued against Noel.

Specifically, the SAC reports Harris as stating that Officer Barile was known to "embellish" reports and would frequently write long reports to cover his actions when those actions were subject to question. Id. at 50, p. 8. Harris claims that higher ranking officers within the organization reviewed and authorized these reports even though they knew they were used to cover questionable arrests. Id. According to the SAC, Harris

---

[2] The Court notes that the allegations contained in the SAC are mis-numbered, with ¶ 59 on page 10 followed by ¶ 47. The references in this Memorandum and Order are to the paragraph numbers as utilized in the SAC, except that where the same paragraph number is used twice, the paragraph designation will be followed by the page number of the SAC where it appears.

also indicated that Officer Barile had sergeant shopped in the past and that the practice was tolerated by department supervisors and managers. Id.

As indicated above, irrespective of whether Officer Barile's actions in writing up reports and recommending charges were somehow condoned and/or ratified by the de facto policies of the Merced County Sheriff's Department, Officer Barile contends that he was entitled to qualified immunity with respect to his actions in searching Adolfo's residence and taking Noel into custody in the first place. He has filed an interlocutory appeal with the Ninth Circuit challenging this Court's denial of his qualified immunity claim. Through the present motion, the County seeks to stay the proceedings against it, arguing that if Officer Barile is successful in invoking qualified immunity by way of his appeal, there will be no underlying constitutional violation. According to the County, without such an underlying violation it necessarily cannot face so-called Monell liability, which makes a municipal entity like the County liable for a constitutional violation if the violation was facilitated by the County's own policy or custom. The County also appears to argue that even if Officer Barile's qualified immunity argument fails, its participation in this lawsuit should be bifurcated so as to require Plaintiffs to establish Officer Barile's own culpability at trial before any potential liability by the County for such culpability is assessed.

**STANDARD**

A court may stay proceedings pending before it where interests of judicial economy make a stay appropriate. Landis v. North Am. Co., 299 U.S. 248, 254 (1936). This power stems from the court's inherent ability to control the disposition of cases on its docket. Fernandez v. Obesity Research Inst., LLC., 2013 WL 4587005 at *6 (E.D. Cal. Aug. 28, 2013). A stay can be indicated where resolution of another case "may have a substantial impact" on the pending matter. Doyle v. OneWest Bank, N.A., 2015 WL 4605776 at *3 (C.D. Cal. May 21, 2015). In determining the propriety of such a stay,

courts look to issues of judicial economy and the prejudice to either party that may result if the stay is granted or denied. CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). Whether to issue a stay in this regard is a decision necessarily relegated to the court's discretion. Nken v. Holder, 556 U.S. 418, 433-34 (2009).

Bifurcation of proceedings is also a matter subject to the court's discretion. Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir. 2001). Under Federal Rule of Civil Procedure 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

**ANALYSIS**

The County points out that the first step in determining whether a defendant is entitled to qualified immunity is to determine whether or not a constitutional violation has occurred. If such a violation has occurred, then the court must next determine whether the right violated was "clearly established" at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). While a municipal entity can be liable under 42 U.S.C. § 1983 if the governmental unit itself supported the violation through its own policy or custom (Monell v. Dept. of Social Servs., 436 U.S. 658, 691-94 (1978)), the County argues that it cannot be liable under Monell based on the actions of its officer if there was no constitutional harm occasioned by the officer's conduct. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer" any alleged authorization by the department "is quite beside the point.").

Reasoning that any liability on the County's part is therefore derivative of, and flows from, an underlying constitutional injury, the County claims that its alleged role in this matter should be bifurcated and stayed pending disposition of whether qualified

///

5

immunity on Officer Barile's part precludes a constitutional injury to Plaintiffs in the first place.

With respect to the propriety of a stay, all parties appear to be in agreement that this entire case, and not just the County of Merced's potential Monell liability, should be stayed pending both the disposition of Officer Barile's appeal and potential mediation in the Ninth Circuit. The Court agrees that should the Ninth Circuit determine that qualified immunity indeed applies to Officer Barile's actions in this matter, any derivative Monell claim on the County's part could be completely foreclosed. Consequently, a stay suspending further discovery and activity in this matter, until such time as an appellate decision is forthcoming, is proper to conserve the time and resources of both the parties and this Court.

The County's request for bifurcation, however, seems to be predicated on a two-fold argument. First, the County maintains that Plaintiffs' claims addressing the County's involvement, but not necessarily the claims related to Defendant Officer Barile, be stayed. Additionally, the County makes a second and broader claim that—should Officer Barile's appeal fail and the denial of qualified immunity be affirmed—Officer Barile's liability should be determined first at any eventual trial. The County's first request is for all intents and purposes moot given the Court's decision to stay the entire action pending Officer Barile's appeal. The County's second request, to bifurcate the County's involvement in this matter at trial from the adjudication of Officer Barile's liability, is, however, another matter. The Court does not believe that judicial economy will be served in bifurcating this case should it go to trial, and accordingly denies that request.

## CONCLUSION

For all the foregoing reasons, the County of Merced's Motion to Bifurcate and Stay (ECF No. 46) is (1) GRANTED with respect to the County's stay request; (2) DENIED as moot with regard to the County additional request that the matter be

bifurcated so as to permit a stay as to the County's involvement, only; and (3) DENIED with respect to any additional claim by the County that trial of this matter be bifurcated so as to adjudicate any claims against Officer Barile first before proceeding to the County's potential liability for misconduct on Officer Barile's part.

IT IS SO ORDERED.

Dated: June 20, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE